# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

WARREN ANTHONY TILLERY,

                    Petitioner,

vs.                                              Case No.  3:13-cv-51-J-32JRK
                                                          3:10-cr-188-J-32JRK

UNITED STATES,

                    Respondent.

_____/

## **REPORT AND RECOMMENDATION**[1]

Petitioner Warren Anthony Tillery ("Petitioner"), proceeding pro se, filed a Motion

Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. No. 1[2]; "§ 2255

Motion") on January 14, 2013.[3]  The Government filed a response in opposition on June 13,

2013.  See United States' Response in Opposition to Defendant's Pro Se Motion Pursuant

to 28 U.S.C. § 2255 (Doc. No. 11).  Petitioner claims in Ground One of the § 2255 Motion that

his trial counsel refused to file a requested appeal.  § 2255 Motion at 4.  On December 16,

---

[1]      "Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2).  "A party may respond to another party's objections within 14 days after being served with a copy." Id.  A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02; Rule 12, Rules Governing Section 2255 Proceedings.

[2]      Citations to Petitioner's criminal case file, United States of America v. Warren Tillery, No. 3:10-cr-188-J-32JRK, are denoted as "Crim. Doc. No. ____." Citations to Petitioner's civil § 2255 case file, Warren Anthony Tillery v. United States of America, No. 3:13-cv-51-J-32JRK, are denoted as "Doc. No. ____."

[3]      The § 2255 Motion was signed by Petitioner on January 8, 2013; it was postmarked January 10, 2013; and it was received and filed by the Clerk on January 14, 2013.

2014, the Honorable Timothy J. Corrigan, United States District Judge, entered an Order requesting that the undersigned conduct an evidentiary hearing consistent with the applicable law of the United States Court of Appeals for the Eleventh Circuit and issue a report and recommendation with regard to the issue raised in Ground One.  <u>See</u> Order Granting Evidentiary Hearing (Doc. No. 18).

On December 22, 2014, consistent with Judge Corrigan's direction, the undersigned appointed Donald B. Mairs, Esquire to represent Petitioner.  <u>See</u> Order (Doc. No. 19).  In the same Order appointing Mr. Mairs, the undersigned set a status hearing for December 29, 2014.  <u>See</u> <u>id.</u>  At the status hearing, the logistics of the evidentiary hearing were discussed, including the transportation of Petitioner to Jacksonville, the availability of witnesses, and the amount of time Mr. Mairs needed to meet with Petitioner and prepare for the hearing.  <u>See</u> Minute Entry (Doc. No. 20).[4]

A second status hearing was set for February 3, 2015.  <u>See</u> <u>id.</u>  The second status hearing was held as scheduled, and Petitioner was present with counsel.  <u>See</u> Minute Entry (Doc. No. 22).  After hearing from all interested parties, the evidentiary hearing was set for March 5, 2015.  <u>See</u> <u>id.</u>

At the March 5, 2015 evidentiary hearing, two witnesses testified.  <u>See</u> Amended Minute Entry (Doc. No. 26); Transcript (Doc. No. 27; "Tr.") at 2.  Petitioner testified on his own behalf.  Tr. at 2, 6.  Susan G. Yazgi, Esquire ("Ms. Yazgi"), Petitioner's counsel in the underlying criminal case, was called as a witness by the Government.  Tr. at 2, 37.  The

---

[4]        Petitioner did not appear for this status hearing, as his presence was not required for the logistical issues discussed.

Government also submitted four (4) exhibits into evidence (Government's Exhibits 1, 2, 3 and 6).  Tr. at 3, 59, 63; <u>see also</u> Gov.'s Ex. List (Doc. No. 25).  The matter is now ripe for decision.

## I.  Procedural History of Criminal Case

Petitioner was charged in a two-count indictment with robbery by force, violence, and fear of injury, in violation of 18 U.S.C. § 1951(a) (Count One) and knowingly possessing a firearm in furtherance of the robbery charged in Count One, in violation of 18 U.S.C. § 924(c) (Count Two).  <u>See</u> Indictment (Crim. Doc. No. 1).  The indictment was returned by the grand jury on July 14, 2010.  <u>See</u> <u>id.</u>

On August 24, 2010, Petitioner made his initial appearance, and he requested Court-appointed counsel.  <u>See</u> Minute Entry (Crim. Doc. No. 9); Oral Motion to Appoint Counsel (Crim. Doc. No. 10).  Petitioner was found to be indigent, and the Federal Public Defender was appointed to represent him.  <u>See</u> Minute Entry (Crim. Doc. No. 9); Order (Crim. Doc. No. 13).  Ms. Yazgi, an Assistant Public Defender, filed a Notice of Appearance on August 27, 2010 (Crim. Doc. No. 15).  On that same date, Petitioner was arraigned with Ms. Yagzi present, and he pleaded not guilty to both counts charged in the indictment.  <u>See</u> Minute Entry (Crim. Doc. No. 16).

Petitioner filed a Motion to Suppress DNA Evidence (Crim. Doc. No. 39; "Motion to Suppress") on April 8, 2011.  A suppression hearing was held before the undersigned on April 26, 2011.  <u>See</u> Minute Entry (Crim. Doc. No. 44).  On August 18, 2011, upon recommendation of the undersigned, the Court entered an Order denying the Motion to Suppress.  <u>See</u> Order (Crim. Doc. No. 57).

On September 26, 2011, pursuant to a written plea agreement, Petitioner pleaded guilty to the robbery by force charge (Count One) in exchange for, among other things, the dismissal of the possession of a firearm in furtherance of the robbery by force charge (Count Two).  See Minute Entry (Crim. Doc. No. 63); Plea Agreement (Crim. Doc. No. 65); Report and Recommendation (Crim. Doc. No. 66).  Of note, Petitioner did not enter a conditional plea of guilty that would have reserved his right to have an appellate court review an adverse determination of the denial of his Motion to Suppress.  See generally Fed. R. Crim. P. 11(a)(3); see also Transcript of Change of Plea Hearing (Crim. Doc. No. 78; "COP Tr."), filed June 4, 2013.

Moreover, at the change of plea hearing, Petitioner was advised of the following:

> By pleading guilty you also waive and give up your right to challenge the way the government obtained any evidence, statement, or confession.  Also by pleading guilty you may lose the right to challenge on appeal any rulings which the Court has made in your case.

COP Tr. at 13.  After being advised of this and the impact of a felony conviction, Petitioner was asked by the Court: "Mr. Tillery, do you fully understand all of the rights that you have, sir, and the rights that you waive and give up by pleading guilty?"  COP Tr. at 13.  Petitioner responded, "Yes, I do," before asking for a moment to speak with Ms. Yazgi.  COP Tr. at 13. A recess of the plea hearing was taken for Petitioner and Ms. Yazgi to discuss matters, and afterwards, the Court again asked if he "fully underst[ood] all of the rights that [he had] and the rights that [he] waive[d] and g[a]ve up by pleading guilty."  COP Tr. at 15.  Petitioner responded, "Yes, I do."  COP Tr. at 13-15.

-4-

When the plea hearing concluded, Ms. Yazgi elected not to waive the fourteen (14) day period to object to the Report and Recommendation of the undersigned, COP Tr. at 36; she retained the right to object in case Petitioner changed his mind regarding his guilty plea, Tr. at 61. Ms. Yazgi testified during the evidentiary hearing that this was contrary to her usual practice of waiving the objection period: "99 percent of the time [Ms. Yazgi] waive[s] the 14-day objection period." Tr. at 61.

On October 19, 2011, the fourteen (14) day objection period having lapsed without any objections filed, the Court accepted Petitioner's guilty plea and adjudicated him guilty. <u>See</u> Acceptance of Plea of Guilty, Adjudication of Guilt, and Notice of Sentencing (Crim. Doc. No. 67).

Petitioner's sentencing hearing was held on January 11, 2012. <u>See</u> Minute Entry (Crim. Doc. No. 68). The Court sentenced Petitioner to 188 months' imprisonment and a term of supervised release of thirty-six (36) months. <u>See</u> Judgment (Crim. Doc. No. 69), signed January 17, 2012 and entered January 19, 2012. Count Two was dismissed pursuant to the plea agreement. <u>See</u> <u>id.</u>

At the sentencing hearing, the Court explained to Petitioner that in his plea agreement he waived the right to appeal except under certain circumstances, none of which appeared to the Court to be present. Sentencing Transcript (Crim. Doc. No. 76; "Sentencing Tr."), filed May 29, 2013, at 39. The Court, however, advised Petitioner, "if you think you have any grounds to appeal, you must file that appeal within 14 days. Failure to do so would be another ground to waive any appeal rights that you have." Sentencing Tr. at 39. Petitioner did not file a notice of appeal.

As noted above, Petitioner filed the § 2255 Motion on January 14, 2013.  Upon its filing, the civil docket was created by the Clerk.  In Ground One of the § 2255 Motion, Petitioner claims that he asked Ms. Yazgi to file a notice of appeal and she was ineffective in failing to do so.  See § 2255 Motion at 4.

## II.  March 5, 2015 Evidentiary Hearing

### A. Petitioner's Testimony

Petitioner testified on direct examination that a motion to suppress had been filed and denied in his case, and he "wanted to appeal the [denial of the] motion."  Tr. at 8.  According to Petitioner, when he and Ms. Yazgi were discussing Petitioner entering a guilty plea, Ms. Yazgi advised him that appealing "the suppression hearing . . . would be no problem."  Tr. at 9.  Petitioner further testified that during the plea colloquy, he asked to speak to Ms. Yazgi "because [he] wanted to make sure that what she stated was confirmed, that [he] still [would] be able to appeal [his] suppression hearing."  Tr. at 9.

At the sentencing hearing, according to Petitioner, Ms. Yazgi again assured Petitioner he would be able to "appeal [his] suppression hearing," but he would not be able to appeal the sentence.  Tr. at 10.  Petitioner testified that this discussion took place "outside the door" and lasted "about two or three minutes."  Tr. at 10.

A couple of days after the sentencing hearing, Ms. Yazgi visited Petitioner at the local jail where he was being held awaiting designation.  Tr. at 10.  During this visit, Petitioner told Ms. Yazgi that he wanted to appeal.  Tr. at 11.  According to Petitioner, Ms. Yazgi advised him that he could not appeal the "suppression hearing," contrary to what she had previously advised him.  Tr. at 11.  Petitioner testified that Ms. Yazgi said that he would have had to

have gone to trial to preserve his right to appeal the suppression order.  Tr. at 11.  Petitioner further testified that he was "really confused" and "really blown" at this point and just "walked away."  Tr. at 11; <u>see also</u> Tr. at 12.

At some point shortly after the visitation, Petitioner called the Federal Public Defender's Office and "told them [he wanted] to appeal [his] case."  Tr. at 12-13.  Within two or three days of this call, Ms. Yazgi visited Petitioner at the local jail for a second post-sentencing meeting.  Tr. at 13.

During the second meeting, according to Petitioner, Ms. Yazgi told him that he did not have any "grounds for appeal."  Tr. at 13.  Petitioner testified that he told Ms. Yazgi to "[j]ust appeal the case anyway and we'll see how . . . an appeal lawyer would look at it."  Tr. at 13.  Petitioner testified that Ms. Yazgi attempted to talk him out of appealing by telling him he would be wasting Government money.  Tr. at 13-14.  He told Ms. Yazgi he still wanted her to file an appeal, but she resisted, telling Petitioner that she would not "appeal . . . because [he] ha[d] no grounds."  Tr. at 13-14.  When asked by his counsel during the hearing, Petitioner confirmed that at the end of the second meeting, he expressed to Ms. Yazgi his desire to appeal.  Tr. at 14.

In about April or May 2012, Petitioner called Ms. Yazgi from Otisville, New York, where he was serving his sentence.  Tr. at 14-15.  Petitioner wanted, among other things, to know about the status of his appeal, and according to Petitioner, Ms. Yazgi told him she had not "put an appeal in."  Tr. at 14.  Petitioner testified, "I didn't believe that she didn't do it - - she didn't put the appeal in."  Tr. at 14.  That was the last time Petitioner spoke to Ms. Yazgi.  Tr. at 15.

Petitioner stated that he later received a letter from Ms. Yazgi that set out her recollection about the taking of an appeal in Petitioner's case.  Tr. at 15.  In the letter, Ms. Yazgi explained that Petitioner at one time did want to appeal, but in the end, he decided he did not want to appeal.  Tr. at 15.  Petitioner did not respond to the letter; he instead filed the instant § 2255 Motion.  Tr. at 15.

On cross-examination, when Petitioner was asked if what he wanted to appeal was the underlying motion to suppress, he replied, "I wanted to appeal everything, the sentence - - whatever I can appeal, I wanted to appeal."  Tr. at 24.  Petitioner stated that Ms. Yazgi told him he "would be able to appeal the suppression hearing," and Judge Corrigan told him at the sentencing hearing he had fourteen (14) days to appeal the sentence if certain things happened.  Tr. at 24-25.  Petitioner admitted that Judge Corrigan did not tell him he could appeal the suppression hearing.  Tr. at 25.

Petitioner acknowledged on cross examination that he understood that by entering a plea of guilty he was giving up his right to put on a defense to the charge.  Tr. at 29-30.  He further acknowledged that a motion to suppress presents a legal defense to a charge.  Tr. at 30.  Petitioner nevertheless maintained that he was told he would be able to appeal.  Tr. at 30.

The undersigned asked Petitioner if prior to the change of plea hearing he and Ms. Yazgi discussed that by pleading guilty, he had to waive and give up his right to challenge the way the Government obtained any evidence, statement, or confession.  Tr. at 35. Petitioner responded that he did not remember, but if it is in the plea agreement, he "must have went through it."  Tr. at 35.

-8-

**B. Ms. Yazgi's Testimony**

Ms. Yazgi has been a member of the Florida Bar for more than twenty-nine (29) years. Tr. at 38.  She served as an assistant state pubic defender in Sanford, Florida for one (1) year, and then she transferred to the state public defender's office in Jacksonville.  Tr. at 38. She worked there until 2008.  Tr. at 38.  In February 2009, she joined the Federal Public Defender's Office.  Tr. at 38.

Ms. Yazgi has had hundreds of jury trials during the course of her career, Tr. at 39, and she has tried cases ranging from misdemeanors to homicides, Tr. at 39-40.  Part of her experience as both a state and federal public defender includes "negotiating fair dispositions for [her] clients."  Tr. at 40.

Ms. Yazgi visited Petitioner twenty-five (25) times at the pretrial detention facility during the eighteen (18) months that Petitioner's case was pending.  Tr. at 41-43.[5]  She also talked to him over the telephone.  Tr. at 44-45.  Ms. Yazgi testified that she and Petitioner "had a really good relationship," and they had a "really good rapport."  Tr. at 45.

According to Ms. Yazgi, Petitioner "did not have any trouble comprehending legal concepts," but "[h]e would change his mind a lot."  Tr. at 46.  Ms. Yazgi stated Petitioner changed his mind about "[e]verything," including "whether he wanted to go to trial, whether he wanted to file a motion, whether he wanted to plead guilty, [and] whether he wanted to appeal."  Tr. at 46.

---

[5]     Ms. Yazgi is confident in the number of times she visited Petitioner because the number is documented in the Federal Public Defender's "software computer program."  Tr. at 43.

Ms. Yazgi testified that when Petitioner changed his mind regarding a certain matter, she worked through the issue with him "[b]ecause in his case, more than anybody's, he was going to be really penalized if he lost at trial." Tr. at 46.  She explained that Petitioner faced an enhancement of his sentence to mandatory life imprisonment for the robbery charge and a mandatory consecutive seven (7) year term of imprisonment for the firearm charge.  Tr. at 46-47.  In the end, Ms. Yazgi negotiated a plea agreement for Petitioner that included the Government not electing to file the mandatory life imprisonment enhancement and dismissed the firearm count, which carried the consecutive seven (7) year mandatory minimum term of imprisonment.  Tr. at 47.  Ms. Yazgi described it as "a great deal."  Tr. at 47.

Although Ms. Yazgi did not have a specific recollection of reviewing Petitioner's plea agreement with him, she described her regular practice of reviewing plea agreements with her clients.  Tr. at 48-49.  She stated that she "read[s] the plea agreement verbatim to the client, telling them if they don't understand something to stop . . . [her] and [they will] talk about it."  Tr. at 48. Ms. Yazgi did recall specifically about Petitioner that he "always was very concerned about his motion to suppress" involving an attempt to suppress DNA evidence.  Tr. at 49.  According to Ms. Yazgi, Petitioner "knew if he wanted to appeal [the order denying the motion to suppress] that he was going to have to go to trial."  Tr. at 49.  Ms. Yazgi stated that she and Petitioner "talked about that a lot, that if he pled guilty he was giving up his right to have another court review that motion to suppress."  Tr. at 49.  Ms. Yazgi indicated that she was "absolutely" certain she specifically advised Petitioner that the only way he could preserve his right to appeal the order denying the motion to suppress was to proceed to trial.  Tr. at 50.

On January 17, 2012, six (6) days after Petitioner was sentenced, Ms. Yazgi met with Petitioner to determine whether Petitioner wanted to take an appeal. Tr. at 52-53. Ms. Yazgi acknowledged that she did not "have a really good recollection" of the conversation, but she took notes in regard to the meeting. Tr. at 53. According to Ms. Yazgi's notes, Petitioner "was unhappy with some of [her] arguments and he was unhappy with his sentence," but Petitioner "didn't want to appeal." Tr. at 53.

On January 18, 2012, Ms. Yazgi received a telephone call from Petitioner. Tr. at 54, 56. During the telephone conversation, Petitioner said he had changed his mind and he wanted to take an appeal. Tr. at 54, 56. Ms. Yazgi then sent an email to the person in her office who handles appeals advising that Petitioner wanted to appeal. Tr. at 54, 56.

Government's Exhibit 6 was admitted into evidence through Ms. Yazgi. It is a printout of the computer screen of the timekeeping system used by Ms. Yazgi's office dated January 18, 2012. Gov.'s Ex. 6. It indicates that Ms. Yazgi emailed the person in her office who handles appeals and advised that person that Petitioner wanted to pursue an appeal. Id.; see also Tr. at 55, 56.

On January 23, 2012, Ms. Yazgi again met with Petitioner at the detention facility. Tr. at 57. Ms. Yazgi was not sure what prompted the meeting. Tr. at 57. Ms. Yazgi's notes from the meeting indicate she "[d]iscussed appeal with defendant." Tr. at 57; see also Gov.'s Ex. 2. The notes then state, "[Defendant] not going to appeal." Gov.'s Ex. 2. Ms. Yazgi testified that based upon her knowledge of Petitioner's case and the applicable law, Petitioner "did not have anything to appeal." Tr. at 57. She indicated she would have told that to Petitioner. Tr. at 57.

According to Ms. Yazgi, notwithstanding her belief that a defendant has no grounds for appeal, Ms. Yazgi still pursues an appeal if a defendant wants her to do so.  Tr. at 58, 66.  Specifically as to Petitioner, Ms. Yazgi testified that if Petitioner in the end said he wanted to file an appeal, "[she] would have done it."  Id. at 69.

At some point after January 23, 2012, Petitioner was transferred from the local detention facility to a Bureau of Prisons facility.  Tr. at 59-60.  Petitioner called Ms. Yazgi "off and on" and sometimes Petitioner was "upset over the fact that he felt like he had made the wrong decision about wanting to appeal."  Tr. at 60.

Ms. Yazgi on May 4, 2012 wrote a letter to Petitioner.  Tr. at 61; see Gov.'s Ex. 3.  The letter was written in response to one of the telephone conversations during which Petitioner "want[ed] to readdress his unhappiness with what happened."  Tr. at 61.  In the letter, Ms. Yazgi recounted what took place after Petitioner was sentenced regarding the issue of appeal.  Tr. a 61; Gov.'s Ex. 3.  Ms. Yazgi wrote the following, in relevant part:

> I reviewed my notes in your file concerning our conversations about appealing your case.  You were sentenced on January 11, 2012.  I went to Folkston to visit you on January 17, 2012.  My notes say you were unhappy with some of my arguments and the sentence but we had a good conversation.  You did not wish to appeal.  My next set of notes say you called and left a message saying you changed your mind.  I went back out to Folkston on January 23, 2012[.  My n]otes say we discussed appeal again and you agreed that you were not going to appeal.  I remember quit[e] clearly our conversations about your appeal.

Gov.'s Ex. 3; see Tr. at 61-62.  Ms. Yazgi included with the letter a copy of Petitioner's judgment and sentence, the indictment, and the plea agreement.  Gov.'s Ex. 3.  She advised Petitioner that "the prison [would not] allow [her] to send a copy of [Petitioner's] Pre-Sentence

Report." Id. To Ms. Yazgi's recollection, she did not have further contact with Petitioner.  Tr. at 62-63.

Ms. Yazgi explained how appeals are managed in the Federal Public Defender's Office.  Tr. at 63-64.  Essentially, appeals are handled either by Steven Kruer[6] in the Jacksonville branch of the Federal Public Defender's Office or the appellate section in the Orlando branch.  Tr. at 63-64.  "That's their whole job, just to do the appeals."  Tr. at 63.  If an appeal is filed in one of Ms. Yazgi's cases, she does not work on the appeal.  Tr. at 63.  In other words, an appeal does not increase her workload.  Tr. at 64.

On cross examination, Ms. Yazgi was asked why a notice of appeal was not filed at some point after sentencing when Petitioner changed his mind from not wanting to appeal to wanting to appeal.  Tr. at 67.  In response, Ms. Yazgi explained that "Steven [Kruer] never files an appeal until the 14th day, to give him the most time to do it.  It's kind of a standing office policy."  Tr. at 67.  She went on to explain that by waiting until the fourteenth day to file the notice of appeal, it gives the Federal Public Defender's Office more time to prepare the record.  Tr. at 67.  Ms. Yazgi reiterated that during her visit with Petitioner on January 23, 2012 at the pretrial detention facility, within the fourteen day window to appeal, he changed his mind again and decided not to pursue an appeal so one was not filed.  Tr. at 69.

## III.  Discussion

There are two requirements that a petitioner must meet to prevail on a claim of ineffective assistance of counsel: 1) "counsel's representation fell below an objective

---

[6]    Mr. Kruer is "the head paralegal for the Middle District of Florida" Federal Public Defender's Office.  Tr. at 56.

standard of reasonableness"; and 2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 694 (1984).  The two requirements are commonly referred to as the "performance" and "prejudice" prongs respectively.  <u>Reece v. United States</u>, 119 F.3d 1462, 1464 n.4 (11th Cir. 1987) (quotation and citation omitted).  If a petitioner fails to establish either, a court need not consider the other prong in finding no ineffective assistance of counsel.  <u>Strickland</u>, 466 U.S. at 697; <u>see also</u> <u>Reece</u>, 119 F.3d at 1464 n.4 (declining to consider the performance prong after finding that the petitioner failed to satisfy the prejudice prong).

"[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000) (citations omitted).  In this instance, prejudice is presumed, and the defendant/petitioner is entitled to a new appeal without any further showing. <u>Id.</u> (stating that "[t]he . . . denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right . . . demands a presumption of prejudice"); <u>Peguero v. United States</u>, 526 U.S. 23, 28 (1999) (citation omitted) (stating that "when counsel fails to file a requested appeal, a defendant is entitled to . . . an appeal without showing that his appeal would likely have had merit").  This is so even when a defendant/petitioner entered into a plea agreement and waived the right to appeal his sentence.  <u>See</u> <u>Gomez-Diaz v. United States</u>, 433 F.3d 788, 792-93 (11th Cir. 2005); <u>Hernandez v. United States</u>, 212 F. App'x 832, 833-85 (11th Cir. 2006).  "At the other end of the spectrum, a defendant who explicitly tells his attorney <u>not</u> to file an appeal plainly cannot later complain that, by following his

instructions, his counsel performed deficiently." <u>Flores-Ortega</u>, 528 U.S. at 477 (citation omitted).[7]

A court considers various factors in assessing the credibility of witnesses, including a witness's demeanor, the consistencies or inconsistencies within the witness's testimony, and any interest the witness may have in the outcome of the hearing; but the court does not consider the official rank or status of the witness. <u>United States v. Ramirez-Chilel</u>, 289 F.3d 744, 749-50 (11th Cir. 2002); <u>see also</u> <u>Anderson v. City of Bessemer City</u>, 470 U.S. 564, 575 (1985) (indicating various factors to consider when making credibility determinations, such as demeanor, inflection of voice, and whether the testimony is "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it"). In the context of a § 2255 evidentiary hearing in which "the issue comes down to the 'bare-bones testimony' of the defendant against the contradictory testimony of counsel," a court must be sure to consider the relevant factors and articulate the reason(s) for crediting one over the other. <u>Gallego v. United States</u>, 174 F.3d 1196, 1198-99 (11th Cir. 1999).

Here, after considering the evidence and observing the witnesses and their demeanor while they testified, the undersigned credits the testimony and notes of Ms. Yazgi and finds that Petitioner's testimony is not credible to the extent he claims he ultimately instructed Ms. Yazgi to file an appeal. The reasons for these findings follow.

---

[7]    Somewhere near the middle of the spectrum, when a defendant neither specifically directs his attorney to file a notice of appeal nor specifically directs his attorney not to appeal, counsel has a duty to consult with the defendant on the advantages and disadvantages of appealing and to determine the defendant's wishes. <u>See</u> <u>Flores-Ortega</u>, 528 U.S. at 477-80. Here, Petitioner alleges he directed his counsel to appeal and his counsel testified to the contrary. Both Petitioner and his counsel recognize that they discussed the possibility of appealing; the testimony differs only on the ultimate decision that Petitioner made. So, counsel fulfilled the duty to consult.

To start, Petitioner's recollection of his alleged right to appeal the suppression ruling is flatly contradicted by Ms. Yazgi's testimony and the record.[8]  Petitioner claimed during the evidentiary hearing that he was under the belief that notwithstanding his guilty plea, he would be entitled to appeal the Court's ruling on his motion to suppress.  This claim is contrary to Ms. Yazgi's testimony that she "absolutely" advised him he would not be able to appeal that ruling absent going to trial, and it is contrary to the admonition by the Court during the plea hearing that:

> By pleading guilty you also waive and give up your right to challenge the way the government obtained any evidence, statement, or confession.  Also by pleading guilty you may lose the right to challenge on appeal any rulings which the Court has made in your case.

COP Tr. at 13.[9]

---

[8]     Although this issue is somewhat ancillary to the ultimate question of whether Petitioner instructed counsel to appeal, it is relevant to Petitioner's credibility in general.

[9]     Ms. Yazgi confirmed when asked during the evidentiary hearing that the plea agreement actually contained a provision indicating that the only way to preserve the denial of the motion to suppress was to proceed to trial.  COP Tr. at 50.  The relevant provision of the plea agreement itself actually focuses on waiving the right to appeal Defendant's <u>sentence</u>:

> Defendant's Waiver of Right to Appeal and Right to Collaterally Challenge the Sentence
>
> The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed . . . then the defendant is release from his waiver and may appeal the sentence . . . .

Plea Agreement (Crim. Doc. No. 65) at 8-9.  The Federal Rules of Criminal Procedure, however, contemplate that a reservation of the right to appeal an adverse ruling on a pretrial motion must be made in writing through a conditional plea that is consented to by both the Court and the Government.  <u>See</u> Fed. R. Crim. P. 11(a)(2) (providing that "[w]ith the consent of the court and the government, a defendant

(continued...)

Petitioner confirmed twice during the plea hearing that he understood he was waiving these rights.  COP Tr. at 13, 15.  Although Petitioner claims Ms. Yazgi told him during the recess that he would be able to appeal the suppression ruling, this claim is belied by the record in that Petitioner did not enter into a conditional guilty plea that would have preserved this right.  If Petitioner had been under such a belief and communicated it to Ms. Yazgi during the recess, she would have had an obligation to inform the Court and/or abort the plea hearing.  She did neither; instead, Petitioner confirmed for a second time after the recess that he understood the rights he was giving up.  Further, Petitioner's alleged belief in this regard is belied by the fact that Ms. Yazgi retained the fourteen (14) day window to object to the report and recommendation in case Petitioner changed his mind, and the fourteen (14) days passed without any objection being filed.

Next, Petitioner testified that he instructed Ms. Yazgi during their January 17, 2012 post-sentencing meeting to file a notice of appeal.  This testimony is contrary to Ms. Yazgi's notes, taken contemporaneously with the meeting, that indicate Petitioner did not wish to appeal.  Gov.'s Ex. 1.

The next day, January 18, 2012, Petitioner called Ms. Yazgi.  The Federal Public Defender's Office records show that following the phone call, Ms. Yazgi documented that Petitioner "wants appeal" and that she emailed the appropriate individual at the Federal Public Defender's Office to initiate the appeal.  Gov.'s Ex. 6.  Ms. Yazgi's documentation of

---

[9](...continued)
may enter a conditional plea of guilty or nolo contendre, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion").  Here, Defendant did not enter a conditional plea and did not reserve in writing the right to appeal the suppression issue.

the intent to appeal one day after initially noting that Petitioner did not want to appeal indicates her willingness to file an appeal if requested.

Five days later, January 23, 2012, Ms. Yazgi visited Petitioner at the detention facility. Although Ms. Yazgi did not have a clear recollection of that meeting, her contemporaneous notes indicate that she discussed the appeal with Petitioner.  Gov.'s Ex. 2.  Ms. Yazgi testified that it was her belief Petitioner had nothing to appeal, and she would have advised him of that.  Petitioner acknowledged that Ms. Yazgi advised him he had no grounds for an appeal, but he claimed that by the end of the meeting, he had maintained his desire to appeal.  Ms. Yazgi's notes from that day, on the other hand, end by stating that Petitioner was "not going to appeal."  Gov.'s Ex. 2.

Petitioner called Ms. Yazgi from prison in April or May of 2012.  He claimed it was to inquire about the status of his appeal.  The two obviously had a different recollection about Petitioner's alleged desire to appeal, because Ms. Yazgi wrote Petitioner a letter after that call that laid out in some detail her recollection of their conversations regarding appeal.  See Gov.'s Ex. 3.   The explanation set forth in the letter is consistent with Ms. Yazgi's contemporaneous notes and with Ms. Yazgi's testimony (to the extent she recalled these matters).  It is inconsistent with Petitioner's testimony.

In sum, Ms. Yazgi's documentation is consistent with her overall testimony. On the other hand, Petitioner's testimony is internally inconsistent to a degree, it is partially belied by the record, and his demeanor did not convince the undersigned that he was being truthful.  The undersigned finds incredible Petitioner's testimony that he ultimately instructed Ms. Yazgi to appeal.  Accordingly, Petitioner's claim of ineffective assistance of counsel on

the part of Ms. Yazgi is without merit.  See Flores-Ortega, 528 U.S. at 477 (citation omitted) (stating that "a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently").

### IV.  Conclusion

For all of the foregoing reasons, it is

**RECOMMENDED:**

That Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. No. 1) be **DENIED as to Ground One**.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on September 18, 2015.

**JAMES R. KLINDT**
United States Magistrate Judge

kaw
Copies to:

Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record
Pro se parties (if any)