# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

WARREN ANTHONY TILLERY,

        Petitioner,

vs.                                         Case No.:    3:13-cv-51-J-32JRK
                                                                               3:10-cr-188-J-32JRK

UNITED STATES OF AMERICA,

        Respondent.

_____/

## ORDER

This cause is before the Court on Petitioner Warren Anthony Tillery's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Doc. 1).[1] The Court referred Ground One of the Motion to the Honorable James R. Klindt, United States Magistrate Judge, for an evidentiary hearing and a Report and Recommendation concerning whether trial counsel failed to file a requested notice of appeal. (See Doc. 18). Judge Klindt appointed counsel for Petitioner (Doc. 19), and held a hearing on March 5, 2015 (see generally Doc. 24). Following the hearing, Judge Klindt issued a Report recommending that the Court deny Ground One of the Motion to Vacate. (Doc. 29). Petitioner has filed a timely objection. (See Doc. 30). For the reasons set forth below, Petitioner's objection to the Report and Recommendation is

---

[1]    Citations to the record in the underlying criminal case, United States of America vs. Warren Anthony Tillery, Case No. 3:10-cr-188-J-32JRK, will be denoted as "Crim. Doc. __." Citations to the record in the civil § 2255 case, Case No. 3:13-cv-51-J-32JRK, will be denoted as "Doc. __."

1

due to be overruled and the Report and Recommendation is due to be adopted. Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the remaining grounds in the petition. See Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (an evidentiary hearing on a § 2255 petition is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming that the facts he alleges are true, he still would not be entitled to any relief). For the reasons set forth below, Petitioner's motion to vacate is due to be denied.

I.  **Background**

The procedural history is accurately recounted in the Report and Recommendation (see Doc. 29 at 3-6), and the Court need not duplicate that effort. The Court provides only the following brief summary. A grand jury charged Petitioner with one count of robbery affecting interstate commerce, in violation of 18 U.S.C. § 1951(a) ("Hobbs Act" robbery) (Count One), and one count of possessing a firearm in furtherance of the aforementioned robbery, in violation of 18 U.S.C. § 924(c) (Count Two). (Crim. Doc. 1, Indictment). Pursuant to a written plea agreement, Petitioner pled guilty to the robbery charge and the United States moved to dismiss the firearm charge. (See Crim. Doc. 65, Plea Agreement). Petitioner admitted to robbing a Food Lion of $1,461.40, and binding three employees' hands with zip ties in the process. (See Crim. Doc. 65 at 13-14; Crim. Doc. 78, Plea Transcript at 28-31). As part of the agreement, Petitioner waived the right to directly

appeal or collaterally attack his sentence. (Crim. Doc. 65 at 8-9; Crim. Doc. 78 at 24-27). Having been advised of the charge and its elements, the factual basis, and his various due process rights, Petitioner stated that he waived those rights, and that he knowingly and voluntarily pled guilty. (See Crim. Doc. 78 at 13-15, 24-27, 28-34, 36).

At the sentencing hearing, the Court determined that Petitioner was a career offender under § 4B1.1 of the United States Sentencing Guidelines, and that his guidelines range was 151 to 188 months in prison. The Court sentenced Petitioner to a term of 188 months, which was below the 20-year (240-month) statutory maximum. (See Crim. Doc. 76, Sentencing Tr. at 32-39).

## II. Discussion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamental as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979). Challenges to a district court's application of the United States Sentencing Guidelines, for example, are not so fundamental as to be cognizable on collateral review. Spencer v. United States, 773 F.3d 1132, 1138-40 (11th Cir.

3

2014) (en banc). A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack. United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both that counsel's performance fell below an objective standard of reasonableness and that, as a result, he suffered prejudice sufficient to undermine confidence in the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984). Where a defendant has pled guilty, he must show that trial counsel's advice "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 57, 59 (1985) (citations omitted). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. The petitioner bears the burden of proof on both the "performance" prong and the "prejudice" prong, and he must prove both to prevail. Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001).

### A. Ground One: Whether counsel failed to file a requested notice of appeal

In Ground One, Petitioner alleged that he instructed counsel, Susan Good Yazgi, Esq., an Assistant Federal Public Defender, to file a notice of appeal, but that she did not do so. (Doc. 1 at 4). The Court referred this ground for an evidentiary hearing and a report and recommendation, as mentioned above. The United States Magistrate Judge recommended that the Court deny this claim. After reviewing the

record, the testimony of Petitioner and Ms. Yazgi, as well as the applicable law, the Magistrate Judge credited Ms. Yazgi's testimony that she met twice with Petitioner following the sentencing hearing to discuss appeals, and that Petitioner ultimately decided that he would not appeal. (See Doc. 29 at 13-19). Accordingly, the Magistrate Judge concluded that Petitioner did not instruct Ms. Yazgi to file a notice of appeal, and as such, Ms. Yazgi did not render ineffective assistance of counsel. (Id. at 18-19).

Petitioner timely objected to the Report and Recommendation. (See Doc. 30). Specifically, Petitioner objected to the magistrate judge's decision to credit Ms. Yazgi's testimony over Petitioner's, particularly in regard to whether Petitioner instructed Ms. Yazgi to file a notice of appeal. (Id. at 1). The thrust of Petitioner's objection is that the record does not reflect that Petitioner was specifically advised that by pleading guilty, he waived the right to appeal the denial of his motion to suppress DNA evidence. (See id. at 1-2). Because the parties do not dispute that the motion to suppress was important to Petitioner, what Petitioner is presumably arguing is that if he was under the impression he could still appeal the suppression issue, it makes his claim that he told Ms. Yazgi to appeal more credible.

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b). If no specific objections to findings of facts are filed, the district court is not required to conduct a de novo review of those findings. See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993); see also 28 U.S.C. § 636(b)(1). However, a district court must "make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The district court must review legal conclusions <u>de novo</u>. <u>See</u> <u>Cooper-Houston v. Southern Ry. Co.</u>, 37 F.3d 603, 604 (11th Cir. 1994); <u>United States v. Rice</u>, No. 2:07-mc-8-FtM-29SPC, 2007 WL 1428615, at *1 (M.D. Fla. May 14, 2007).

Petitioner does not argue that Ms. Yazgi failed to adequately consult with him about the right to appeal, as was the issue in <u>Roe v. Flores-Ortega</u>, 528 U.S. 470 (2000). (<u>See</u> Doc. 29 at 15 n.7; Doc. 1 at 4). Here, the question is simply whether or not Petitioner instructed Ms. Yazgi to file a notice of appeal. Therefore, the resolution of this ground boils down to a credibility determination between Petitioner and Ms. Yazgi. The Court has surveyed the record in the underlying criminal case, Petitioner's Motion to Vacate, the transcript of the evidentiary hearing (Doc. 27), the Report and Recommendation, and Petitioner's objections thereto, and conducted a <u>de novo</u> review of the Report's credibility determination and its legal conclusions. Upon a careful review, the Court finds that the record amply supports the Magistrate Judge's decision to credit Ms. Yazgi's testimony over Petitioner's. For the reasons set forth in the Report and Recommendation, the Court agrees that Petitioner did not instruct Ms. Yazgi to file a notice of appeal, and therefore she did not render ineffective assistance of counsel by not filing such a notice. The Court only pauses to note that the record belies Petitioner's argument that he thought he could still appeal the denial of his motion to suppress after pleading guilty. During the plea colloquy, the Court advised Petitioner as follows: "<u>By pleading guilty you also waive and give up your right to challenge the way the government obtained any evidence, statement,</u>

6

or confession. Also by pleading guilty you may lose the right to challenge on appeal any rulings which the Court has made in your case." (Crim. Doc. 78, Plea Tr. at 13) (emphasis added). The Court stated in no uncertain terms that Petitioner waived the right to attack the way the government obtained the evidence against him. Petitioner stated that he understood and accepted that waiver (id. at 15), so he could not have reasonably been under the impression that he could appeal the denial of the motion to suppress. Accordingly, the Report and Recommendation is due to be adopted as the opinion of the Court with respect to Ground One.

### B. Ground Two: Whether counsel coerced Petitioner into pleading guilty

In Ground Two, Petitioner alleges that counsel coerced him to plead guilty by threatening him that he would be sentenced to life in prison if he went to trial. (Doc. 1 at 5). Petitioner claims that counsel used the threat of a mandatory life sentence, as well as the inducement of having his firearm charge dropped, to persuade him to plead guilty to the robbery charge, even though counsel allegedly knew "that [the firearm] charge cannot [be] applied because no description of the gun was in the indictment." (Id.).

Although Petitioner pled guilty and waived the right to directly appeal or collaterally attack his sentence, he may still challenge the knowing and voluntary nature of his guilty plea. See Baird v. United States, 445 F. App'x 252, 254 (11th Cir. 2011) (citing Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992)).

Counsel did not coerce Petitioner to plead guilty, however. To the contrary, counsel negotiated a plea agreement that was highly favorable to Petitioner, and

7

Petitioner voluntarily accepted it. In the underlying criminal case, the government was of the position that Petitioner was subject to a mandatory sentence of life in prison under 18 U.S.C. § 3559(c) because he had a prior conviction for armed robbery, plus another prior conviction for attempted robbery.[2] The United States relayed at the sentencing hearing, and Ms. Yazgi testified at the § 2255 evidentiary hearing, that the government was prepared to file an enhancement notice pursuant to 21 U.S.C. § 851 and to seek a life sentence if the case went to trial. (See Crim. Doc. 76 at 19-20; Doc. 27 at 46). Had Petitioner proceeded to trial, there is a very high likelihood he would have been convicted of either the robbery charge or the firearm charge (if not both) given the strength of the evidence. Petitioner's DNA was on the zip ties used to bind the victims' hands, one of the robbery victims positively identified Petitioner as the robber, and all three of the victims testified that Petitioner used a gun to force the victims to comply with his demands. (See Crim. Doc. 65 at 13-14; Crim. Doc. 78 at 28-31; Crim. Doc. 76 at 10, 12, 15). As such, proceeding to trial carried a substantial risk that Petitioner would end up being sentenced to life in prison.

However, the plea agreement spared him that fate. In exchange for Petitioner's guilty plea, the United States declined to file a § 851 enhancement notice and forewent seeking a life sentence. (See Crim. Doc. 76 at 19-20). The United States also moved to dismiss the firearm charge, which carried a mandatory 7-year consecutive sentence. (See Crim. Doc. 65 at 2; Crim. Doc. 76 at 7). As a result,

---

[2]   (See Presentence Investigation Report at 9, ¶¶ 43-44).

8

Petitioner pled guilty to an offense that carried a 20-year maximum term of imprisonment, see 18 U.S.C. § 1951(a), and he was sentenced to 15 years and eight months (see Crim. Doc. 69 at 2). Although counsel might have told Petitioner that he would be sentenced to life in prison if he went to trial, an attorney does not "threaten" her client merely by advising him of the practical and legal consequences of a given decision. Cf. Gaedtke v. McNeil, 612 F. Supp. 2d 1209, 1224 (M.D. Fla. 2009) (trial judge did not "threaten" defendant by advising him that he faced a greater sentence if he did not accept state's plea offer). Indeed, Petitioner affirmed under oath at his plea colloquy that nobody had threatened or coerced him to waive his right to trial and plead guilty. (Crim. Doc. 78 at 32-33). Such sworn statements are a formidable barrier to collateral relief. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Because Petitioner has given the Court no reason to disregard the sworn declarations he made at the plea colloquy, other than his own conclusory allegations that his attorney "threatened" him, relief is due to be denied. See Winthrop-Redin v. United States, 767 F.3d 1210, 1216-17 (11th Cir. 2014). Simply put, "[w]hen a defendant pleads guilty relying upon his counsel's best professional judgment, he cannot later argue that his plea was due to coercion by counsel." United States v. Lagrone, 727 F.2d 1037, 1038 (11th Cir. 1984).

Petitioner also seems to claim that counsel coerced him to plead guilty because she essentially failed to advise him that the government's promise to drop the firearm charge was an illusory benefit. (See Doc. 1 at 5). Counsel knew it was an illusory benefit, says Petitioner, because Count Two of the indictment was defective anyway

9

for not describing the type and caliber of the firearm. (Id.). Petitioner's claim lacks merit, because even assuming the indictment was defective in describing the firearm, it would not render his plea of guilty to the robbery charge unknowing or involuntary. The record of the plea colloquy reflects that Petitioner was well advised of the Hobbs Act robbery charge and its elements, his due process rights, the factual basis, and the consequences of a conviction, and that he voluntarily pled guilty. (See Crim. Doc. 78 at 13-15, 24-27, 28-34, 36). The longstanding rule is that a knowing and voluntary guilty plea waives any non-jurisdictional errors in the proceedings, including non-jurisdictional defects in the indictment. United States v. Brown, 752 F.3d 1344, 1347 (11th Cir. 2014).[3] A technical defect in the indictment, such as what Petitioner alleges here, cannot be enough to render an otherwise knowing and voluntary guilty plea unknowing and involuntary. Otherwise, such technical errors would come to invalidate guilty pleas. That cannot be so, because guilty pleas must be "accorded a great measure of finality." Blackledge, 431 U.S. at 72. Therefore, the Court rejects Petitioner's argument that counsel's failure to advise him of the indictment's allegedly defective description of the firearm made his guilty plea involuntary. Moreover, there is not a reasonable likelihood that Petitioner would have rejected the plea offer even if he had believed that the firearm charge was technically defective, because Petitioner did not plead guilty only to avoid the firearm charge. The much

---

[3] Because Count Two of the indictment alleged a violation of 18 U.S.C. § 924(c), a federal criminal statute, it adequately invoked the federal court's subject-matter jurisdiction. See Brown, 752 F.3d at 1354 (citing Alikhani v. United States, 200 F.3d 732, 734-35 (11th Cir. 2000)). Therefore, the alleged failure to adequately describe the firearm would be a non-jurisdictional defect in the indictment.

10

likelier reason why Petitioner pled guilty was to avoid a life sentence under 18 U.S.C. § 3559(c), and the plea agreement accomplished that goal. Accordingly, it is not reasonably likely that Petitioner's unawareness of a technical defect in the firearm charge affected his decision to plead guilty.

Additionally, Petitioner's underlying premise – that the firearm charge was inapplicable because the indictment failed to adequately describe the gun – is wrong. Count Two of the indictment alleged that Petitioner violated 18 U.S.C. § 924(c) by knowingly possessing a firearm, described as "a pistol," in furtherance of the Hobbs Act robbery alleged in Count One. (Crim. Doc. 1 at 2). Count Two identified the date and county in which the alleged firearm offense occurred. (Id.). Moreover, because Count Two incorporated the robbery charge by reference, it specified the precise location and the crime in furtherance of which Petitioner allegedly possessed the gun. (See id. at 1-2). A court "give[s] the indictment a common sense construction, and its validity is to be determined by practical, not technical, considerations." United States v. Poirier, 321 F.3d 1024, 1029 (11th Cir. 2003) (quotation marks and citations omitted). Therefore, an indictment is valid if it "1) presents the essential elements of the charged offense, 2) notifies the accused of the charges to be defended against, and 3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." United States v. Woodruff, 296 F.3d 1041, 1046 (11th Cir. 2002) (quotation marks and citations omitted). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as the words of themselves fully, directly, and

11

expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." Hamling v. United States, 418 U.S. 87, 117 (1974) (citation omitted).  Here, Count Two of the indictment satisfied these considerations by citing the relevant statute, tracking the statute's language, and by giving a sufficiently detailed account of the facts on which the charge was based to notify Petitioner of the allegations.  (Compare Crim. Doc. 1 at 2 with 18 U.S.C. § 924(c)(1)).  Petitioner could not have been confused as to the basis of the firearm charge.  Moreover, nothing in the language of 18 U.S.C. § 924(c) requires the government to prove, or the indictment to allege, the make, model, serial number, or caliber of the firearm.  Accordingly, counsel did not provide deficient performance by not advising Petitioner that Count Two of the indictment was defective merely because it described the firearm as a "pistol."

Lastly, Petitioner suggests that his guilty plea was unintelligent because he did not know "he was going to be enhanced for his priors[.]"  (Doc. 1 at 5).  Had he known this, Petitioner contends he would have gone to trial.  (Id.).  It is not clear whether Petitioner is referring to the possibility that his sentence could have been enhanced under 21 U.S.C. § 851 based on prior robbery convictions, or if he is referring to his designation as a career offender under § 4B1.1 of the United States Sentencing Guidelines.  If he is referring to a § 851 enhancement, the claim is factually meritless because the United States never filed such an enhancement.  If he is referring to his designation as a career offender under the guidelines, his claim is belied by his sworn declarations during the plea colloquy.  Petitioner stated that he

understood that by pleading guilty, he could be sentenced up to the 20-year maximum allowed by statute. (See Crim. Doc. 78 at 16, 19-20). If anything, it appeared that Petitioner went into the plea colloquy assuming he would receive the maximum sentence. (See id. at 33). Petitioner's plea agreement also informed him, under a section titled "Sentencing Information," that the government reserved the right to "report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads…." (Crim. Doc. 65 at 7). Moreover, Petitioner stated at the plea colloquy that he and trial counsel discussed the applicability of the United States Sentencing Guidelines. (Crim. Doc. 78 at 15-17). Neither Petitioner nor counsel expressed surprise or objection when the Court announced that Petitioner qualified to be sentenced as a career offender under the Guidelines due to prior convictions. (See Crim. Doc. 76 at 5-6). Thus, the record reflects that Petitioner pled guilty knowing that he faced up to a 20-year sentence, and that other criminal acts could influence his sentence. Accordingly, the record refutes Petitioner's claim that he would have gone to trial had he known that prior convictions could affect his sentence.

### C. Ground Three

In Ground Three, Petitioner claims that the Court improperly applied the United States Sentencing Guidelines by increasing his offense level by five levels for the use of a firearm, pursuant to U.S.S.G. § 2B3.1(b)(2)(C). (Doc. 1 at 6-7). First,

13

Petitioner's claim is barred by the sentence-appeal waiver in his plea agreement. Petitioner waived the right to directly appeal or collaterally attack his sentence, with limited exceptions that are not applicable here. (See Crim. Doc. 65 at 8-9). The record reflects that Petitioner's acceptance of the appeal-waiver was well-informed, knowing, and voluntary. (See Crim. Doc. 78 at 24-27). Therefore, a valid appeal-waiver bars Petitioner from raising this issue. Second, an alleged misapplication of advisory sentencing guidelines is not so fundamental as to warrant collateral relief. Spencer, 773 F.3d at 1138-40. Accordingly, relief on Ground Three is due to be denied.

### D. Ground Four

In Ground Four, Petitioner alleges that the firearm charge (Count Two of the indictment) was defective because it failed to describe the type and caliber of the gun. (Doc. 1 at 8). For the reasons explained in Ground Two above, this claim lacks merit because Count Two gave Petitioner sufficient notice of the charge, and nothing in the language of 18 U.S.C. § 924(c) requires the indictment to allege the type and caliber of the firearm. Additionally, even if there had been error, such error would be harmless because the firearm charge was dismissed. (See Crim. Doc. 65 at 2; Crim. Doc. 69, Judgment at 1). Relief on this ground is therefore due to be denied.

### E. Ground Five

In Ground Five, Petitioner alleges that counsel rendered ineffective assistance by failing to investigate a witness relevant to a pretrial motion to suppress. (Doc. 1 at 13-15). Before trial, Petitioner moved to suppress DNA evidence that was used to

connect him to the crime scene. Specifically, Petitioner moved to suppress his DNA profile from the Combined DNA Index System ("CODIS"), which the government used to identify Petitioner as the source of the DNA on the zip ties that bound the victims' hands. Petitioner's DNA was in CODIS because in 2005, he consented to giving a DNA sample in order to clear himself as a "person of interest" in an unrelated crime. (See Doc. 1 at 13-14). However, Petitioner argued that it was unlawful for authorities to enter his DNA into CODIS, because he was not informed at the time he provided the sample that it would be entered into a permanent database. (See Crim. Doc. 39, Motion to Suppress at 3; Doc. 1 at 13-14). This Court denied Petitioner's motion to suppress, explaining in part that Petitioner knew when he gave the 2005 DNA sample that it could be used against him in any criminal proceeding where he stood accused. (See Crim. Doc. 53, Report and Recommendation on Motion to Suppress at 26-27; Crim. Doc. 57, Order Denying Motion to Suppress and Adopting Report and Recommendation). Petitioner now contends that trial counsel was ineffective for failing to investigate a Detective Ottinger, who was involved in taking Petitioner's DNA in 2005, or gather other evidence related to the 2005 collection of his DNA (such as the agreement under which he submitted his DNA), which he contends would have shown that he did not consent to having his DNA entered into CODIS or a CODIS-like database.

Even assuming that counsel performed deficiently by not investigating Detective Ottinger or the 2005 agreement, and assuming that this claim is not precluded by a knowing and voluntary guilty plea, he still has not established

15

prejudice. To establish prejudice from counsel's alleged ineffectiveness regarding a motion to suppress, a petitioner would have to demonstrate that, absent the excludable evidence, there is a reasonable probability he would have been acquitted. Kimmelman v. Morrison, 477 U.S. 365, 375 (1986). No such probability exists here. Even had counsel investigated Detective Ottinger and the 2005 DNA agreement, and managed to suppress the 2005 CODIS DNA, the government could still have matched the DNA evidence in this case with another copy of Petitioner's DNA profile. In 2002, law enforcement entered a separate DNA profile of Petitioner into CODIS because he was a convicted offender serving time in a Florida correctional facility. (See Crim. Doc. 53 at 19-20). Petitioner does not allege any error regarding the creation of his 2002 CODIS DNA profile, either in his Motion to Vacate or in his motion to suppress (see id. at 30). The DNA on the zip ties matched Petitioner's 2002 CODIS DNA profile as well as his 2005 profile. (See id. at 20). As the Magistrate Judge noted in recommending denial of the motion to suppress:

> Even if the 2005 collection of defendant's DNA and its subsequent uploading were suppressed, the lawful collection of DNA from Defendant in 2002 was properly in CODIS and matched the DNA forensic unknown profile obtained from the zip ties recovered at the Food Lion robbery crime scene. Had the 2005 collection not existed, the 2002 DNA match to the DNA taken from the zip ties would have resulted in the identification of Defendant as a suspect and would have provided ample probable cause for the Government to charge Defendant with Hobbs Act robbery and for the Government to eventually obtain an order compelling Defendant to provide a DNA sample in this case.

(Id. at 30-31). Accordingly, there is not a reasonable probability that the proceedings would have turned out differently even had counsel suppressed the 2005 CODIS DNA

16

profile.  Petitioner did not suffer prejudice under Strickland, and this claim is due to be denied.

### F.  Petitioner's Motions to Amend

Over the course of two motions for leave to amend (Doc. 13, First Motion for Leave to Amend; Doc. 16, Second Motion for Leave to Amend) and his Reply (Doc. 14, Reply), Petitioner attempted to add two claims to his Motion to Vacate.  On June 13, 2013, Petitioner filed his First Motion for Leave to Amend, in which he alleged that the Court improperly applied the Guidelines career offender enhancement because the government did not supply Shepard-approved[4] documents to prove the existence of the necessary predicate convictions.  (Doc. 13 at 1-2).[5]  On June 18, 2013, Petitioner filed a Reply to the government's Response, and on June 25, 2013, he filed a Second Motion for Leave to Amend.  In these two filings, Petitioner alleged that his indictment was defective because, while it alleged that his conduct affected commerce, it did not allege that his conduct affected interstate commerce.  (Doc. 14 at 1; Doc. 16 at 1).

Neither of these two claims warrants collateral relief.[6]  Petitioner's Shepard claim, which challenges the Court's decision to sentence him as a career offender

---

[4] See Shepard v. United States, 544 U.S. 13 (2005).
[5] In the First Motion for Leave to Amend, Petitioner also alleged that counsel was ineffective for not preserving the right to appeal the denial of his motion to suppress. (Doc. 13 at 2-3).  This matter is resolved by the Court's decision in Ground One that Petitioner did not instruct trial counsel to file a notice of appeal.
[6] The Court doubts that Petitioner's effort to amend his motion to vacate to include these new claims is timely, or that the new claims relate back to his timely-filed motion to vacate under Mayle v. Felix, 545 U.S. 644 (2005), and Federal Rule of

under the Guidelines, is precluded by the sentence-appeal waiver in his plea agreement. (See Crim. Doc. 65 at 8-9). Moreover, a challenge to the applicability of the Guidelines career offender enhancement is not cognizable on habeas review. Spencer, 773 F.3d at 1138-40. Therefore, this ground does not merit relief.

Petitioner's argument that the indictment was defective because the robbery charge only alleged an effect on commerce, rather than "interstate commerce," also lacks merit. The Hobbs Act robbery charge alleged a violation of federal law and specifically cited 18 U.S.C. § 1951(a). This was enough to invoke the federal court's subject matter jurisdiction. See Brown, 752 F.3d at 1354 (citing Alikhani, 200 F.3d at 734-35); see also United States v. Brown, 227 F. App'x 795, 798 (11th Cir. 2007). As such, the omission of the word "interstate" from the indictment's allegation of an effect on commerce would be a non-jurisdictional defect, if it is a defect at all. But a knowing and voluntary guilty plea waives all non-jurisdictional errors, including non-jurisdictional defects in the indictment. Brown, 752 F.3d at 1347. Because Petitioner knowingly and freely pled guilty, and because any error in the indictment based on a

---

Civil Procedure 15(c)(2). Petitioner's conviction and sentence became final on February 2, 2012, fourteen days after the Court entered judgment and the time to file a notice of appeal expired. See Adams v. United States, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999). Under 28 U.S.C. § 2255(f)(1), Petitioner had one year, or until February 2, 2013, to timely move for post-conviction relief. Petitioner filed a timely motion to vacate on January 8, 2013, but the motions for leave to amend were not filed until June 2013. As such, the claims would only be timely if they "related back" to the original motion to vacate, meaning that the claims must arise from the same "conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). The Court doubts that the new claims do. However, because the United States did not object to the motions for leave to amend and the Court finds it simpler to address the merits, the Court will grant leave to amend.

18

failure to allege that the robbery affected <u>interstate</u> commerce was non-jurisdictional, relief on this claim is due to be denied.

Therefore, it is hereby **ORDERED**:

1. Petitioner's Objection to the Report and Recommendation (Doc. 30) is **OVERRULED**.  The Report and Recommendation (Doc. 29) is **ADOPTED** as the opinion of the Court with respect to Ground One of the Motion to Vacate.

2. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Doc. 1) is **DENIED**.

3. Petitioner's Motions for Leave to Amend (Doc. 13, Doc. 16) are **GRANTED**. The claims raised therein are **DENIED**.

4. The Clerk of Court shall enter judgment in favor of the United States and against Petitioner, and close the file.

**CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  <u>Id.</u>  "A [COA] may issue… only if the applicant has made a substantial showing of the denial of a constitutional right."  <u>Id.</u> at § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting

19

Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Petitioner has not made the requisite showing in these circumstances. Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** at Jacksonville, Florida this 13th day of January, 2016.

*[signature]*

TIMOTHY J. CORRIGAN
United States District Judge

lc 19

Copies:

Counsel of record
Petitioner Warren Anthony Tillery